## Beaver County Cooperative Association's Appeal.

Argued April 16, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, JAMES and RHODES, JJ.

*Joseph Knox Stone,* for appellant.

*Homer H. Swaney,* with him *Charles J. Margiotti,* Attorney General, and *E. Russell Shockley,* Deputy Attorney General, for appellees.

OPINION BY RHODES, J., July 18, 1935:

The appellant is a cooperative agricultural association, having no capital stock, organized under the Act of June 12, 1919, P. L. 466, as amended by the Act of May 1, 1929, P. L. 1201. (See 14 PS §41, et seq.) The principal business transacted by the association in 1930 and 1931 was the purchase of feed, fertilizer, lime, seed, and spraying materials for farmers and agriculturists; some of whom were members, and some non-members. The association did a gross business with non-members in 1930 of $42,526.13, and in 1931 of $40,-720.63.

The association has its office at Beaver, Beaver County, Pennsylvania. The mercantile tax appraiser of that county assessed the association as a retail dealer under the Act of May 2, 1899, P. L. 184, as amended, in the amount of $45.27 for the year 1931, and in the amount of $43.47 for the year 1932, based on the gross volume of business transacted with non-members in 1930 and 1931. An appeal was taken by the association to the county treasurer and mercantile appraiser. The appraiser was sustained. The association thereupon appealed to the court of common pleas. The court of common pleas, in an opinion by McCONNEL, J., held the association liable for the taxes assessed for the years 1930 and 1931, and entered judgment in favor of the Commonwealth of Pennsylvania. From this judgment the association appealed.

The question here presented is whether the association is liable as a "retail vender of or retail dealer in goods, wares and merchandise," within the meaning

of the Act of May 2, 1899, P. L. 184, §1, as amended by the Act of May 10, 1929, P. L. 1709, §1 (72 PS §2621), to pay a mercantile license tax on the gross volume of business transacted with non-members for the years 1930 and 1931.

The question of whether or not the association is liable to pay a mercantile license tax on the gross volume of business transacted with members of the association has not been raised by the Commonwealth, and is not, therefore, before us on this appeal.

The facts in the case are set forth in the following findings of the court below, to which no exceptions were taken:

"4. The association has at Beaver an office where a manager is employed and a stenographer; they have the use of an automobile and a telephone.

"5. At this office orders are received for material from farmers of Beaver County, and when sufficient orders have been received for carload shipments, the necessary carloads are ordered from the dealers. These carload shipments are ordered to be placed upon whatever railroad siding is most convenient for the farmers and after they are so placed the manager notifies the persons who have ordered material that the car is at a certain siding, and they are required to go to this siding at a certain time and there will receive the goods ordered by them. At the time fixed in this notice the manager of the association is present, sees that the material is unloaded and delivered to the farmers who have ordered it, and collects the amount due the association.

"6. The amount charged each farmer is his proportionate share of the actual cost of the merchandise furnished him, including his pro rata share of all overhead expenses. The overhead expenses are the manager's salary, a bookkeeper's salary, automobile expense and office expenses.

"7. The association has been conducted entirely without profit and has accumulated no funds of any kind.

"8. If sufficient orders are not received for a carload lot at the office of the association, then the members of the association and other farmers in the county are solicited for orders until enough are received to form carload lots.

"9. The merchandise which is ordered is consigned to the association. The dealer from whom the merchandise is purchased knows nobody in the transaction except the cooperative association and looks to it only for his pay.

"10. The association receives orders from both members and non-members and makes no distinction between them. They are each charged the same amount for the goods supplied, and the only advantage which a member has over a non-member is that the member has a right to vote for the officers of the association, etc.

"12. When a farmer who has ordered merchandise through the association is unable to accept and pay for the amount purchased by him, it is sold by the association to some other farmer for the amount due thereon."

Appellant's contention is that it does not, and cannot under the statute creating it, make a profit out of its above transactions with non-members, and that, as it does not seek to make a profit, it is not in business, and therefore not a vender or dealer within the meaning of the Act of 1899, as amended, supra. Section 1 of this act provides: "From and after the passage of this act, each retail vender of or retail dealer in goods, wares and merchandise shall pay an annual mercantile license tax of two dollars, and all persons so engaged shall pay one mill additional on each dollar

of the whole volume, gross, of business transacted annually." (72 PS §2621)

The facts as found by the court below plainly indicate that the appellant is engaged in buying and selling, and that it did not act as an agent in its transactions with non-members. The appellant not only receives, but also solicits, orders to make carload lots. The shipments of merchandise are in carload lots, ordered from distributors or manufacturers by the appellant. This merchandise is consigned directly to the appellant; it assumes entire liability for the payment thereof; and payments are made by the farmers (members and non-members) to the appellant for the goods they have ordered from it. The appellant, and not the individual, is alone liable for the price to the shipper. Between the distributor or manufacturer and the non-members who receive the merchandise from the appellant, there is no contractual relation whatsoever. The merchandise is charged, billed, and shipped to the appellant; title passes to it; and the purchase price is paid by it. The appellant adds overhead to cost of the merchandise when delivered to the non-members who have ordered it. When a non-member fails to accept and pay for the merchandise which he has ordered, the same is sold by the appellant to some other individual for the amount due thereon. Such transactions between the appellant and the non-members clearly constitute the relationship of vender and vendee: Commonwealth v. Thorne, Neale & Co., Inc., 264 Pa. 408, 107 A. 814; Baer's Appeal, 82 Pa. Superior Ct. 414; Commonwealth v. Banker Brothers Company, 38 Pa. Superior Ct. 101.

The practice of buying to sell again is what constitutes one a dealer, and not the intent to make a profit. Whether the appellant is subject to the tax does not depend upon whether it seeks, or has the legal right, to make a profit from its transactions, but whether

it buys to sell again. A "dealer" is defined in the case of Norris Brothers v. Commonwealth, 27 Pa. 494, 495, as follows: "A dealer, in the popular, and therefore in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again." The Supreme Court in this case distinguishes a dealer from a producer or manufacturer, and then sets forth the relationship of the dealer to the producer on the one hand, and the consumer on the other, as follows: "He stands intermediately between the producer and the consumer, and depends for his profit, not upon the labour he bestows on his commodities, but upon the skill and foresight with which he watches the markets." It is apparent, from an examination of the Norris case, that the Supreme Court did not hold therein, as the appellant argues, that the profit motive is necessary in order to make a person a dealer within the meaning of the mercantile tax acts.

Since the appellant was engaged in buying merchandise and selling it to non-members, it was subject to the tax as assessed. The mercantile license tax is imposed, not upon the property or income, but upon the privilege of selling goods, wares, and merchandise, and is measured by the whole volume, gross, of business transacted annually: Commonwealth v. Harrisburg Light & Power Co., 284 Pa. 175, 130 A. 412; Commonwealth v. Bailey, Banks and Biddle Co., 20 Pa. Superior Ct. 210; Crew Levick Co. v. Commonwealth, 245 U. S. 292, 62 L. Ed. 295; Commonwealth v. Pocono Mountain Ice Co., 23 Pa. Superior Ct. 267; Commonwealth v. Abbotts Alderney Dairies, 62 Pa. Superior Ct. 451.

The appellant, in buying farm supplies from distributors and others, and selling such goods, wares, and merchandise to non-members, was exercising that privilege which is taxed by the Act of May 2, 1899, P. L.

312

184, §1, as amended by the Act of May 10, 1929, P. L. 1709, §1 (72 PS §2621). .

We are of the opinion that the action of the court below was correct. The assignments of error are overruled, and the judgment is affirmed.